UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| **AMERICA'S WARRIOR PARTNERSHIP d/b/a PERMIAN WARRIOR PARTNERSHIP,** <br> *Plaintiff,* <br> v. <br><br> **ROY DOBBINS, LEWIS HINOJOS, and MIL2CIV.ORG,** <br> *Defendants.* | § § § § § § § § § <br><br> MO:25-CV-00218-DC-RCG |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT is Defendants Roy Dobbins, Lewis Hinojos, and Mil2Civ.org's ("Defendants") Motion to Dismiss. (Doc. 13).[1] This case is before the Court through a Standing Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration of the Parties' briefs and the case law, the Court **RECOMMENDS** Defendants' Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 13).

### I.    BACKGROUND

This is a case involving allegations of fraud, conversion, and related misconduct stemming from diversion of charitable funds by former employees. (Doc. 1 at 1). Plaintiff America's Warrior Partnership, doing business as Permian Warrior Partnership ("Plaintiff"), is a nonprofit organization providing assistance and resources to United States military veterans throughout the Permian Basin. *Id.* According to Plaintiff's Complaint, it funds its operations primarily through donations and fundraising events organized by regional branch managers. *Id.* at 3–4.

---

1. All page number citations are to CM/ECF generated pagination unless otherwise noted.

In April 2022, Plaintiff hired Defendant Roy Dobbins ("Dobbins") to serve as the regional manager for its newly established branch, the Permian Warrior Partnership. *Id.* at 4. Defendant Lewis Hinojos ("Hinojos") also worked for Plaintiff, assisting Dobbins with sponsor outreach and event coordination. *Id.* Plaintiff alleges both Dobbins and Hinojos were responsible for hosting fundraisers, collecting donations, and forwarding proceeds to Plaintiff's headquarters for distribution to veterans in need. *Id.*

Plaintiff claims Dobbins conspired with Hinojos to divert funds intended for Plaintiff to a separate nonprofit organization they created—Mil2Civ.org ("Mil2Civ)—formed on April 13, 2023. *Id.* Plaintiff alleges Mil2Civ, like Plaintiff, purported to assist veterans in need. *Id.* Despite creating this competing nonprofit, Dobbins and Hinojos allegedly continued to represent themselves as employees of Plaintiff while using Plaintiff's resources, contacts, and goodwill to solicit donations on Mil2Civ's behalf. *Id.* at 5.

According to Plaintiff, Defendants diverted multiple donations intended for Plaintiff by sending potential sponsors Mil2Civ's IRS W-9 forms and invoices instead of Plaintiff's. *Id.* The Complaint identifies several instances between January and March 2024 in which Dobbins, acting as a representative of Plaintiff, allegedly solicited sponsorships from local companies for Plaintiff's fundraising event but directed the resulting payments to Mil2Civ. *Id.* at 5–7. Plaintiff asserts these actions resulted in the misappropriation of more than $233,000.000 in funds. *Id.* at 7.

Plaintiff further alleges Dobbins resigned on August 16, 2024, but continued to use his email account, official signature banner, and business contacts originally provided to him by Plaintiff to solicit additional donations for Mil2Civ. *Id.* For example, Plaintiff claims on October 14, 2024, Dobbins used that email account to send Mil2Civ's tax documentation to one of

Plaintiff's prior donors that had previously contributed $170,000.00 to Plaintiff. *Id.* Thereafter, Dobbins allegedly attended community networking events and made false statements about Plaintiff to potential donors, advising them not to contribute to Plaintiff because their donations would not be used locally. *Id.* at 8. Plaintiff asserts these statements damaged its reputation and goodwill within the veteran support community. *Id.*

Based on these allegations, Plaintiff brings claims against Dobbins and Hinojos for fraud and breach of fiduciary duty; against Dobbins and Mil2Civ for Conversion and Defamation; and against all Defendants for conspiracy. (Doc. 1). On June 4, 2025, Defendants filed the instant Motion to Dismiss arguing Plaintiff fails to state a claim as to each cause of action. (Doc. 13). Plaintiff and Defendant timely filed their respective responses (Docs. 14, 15). Consequently, the instance matter is ripe for disposition.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue*

3

*Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

Federal Rule of Civil Procedure 9(b) governs pleading standards for fraud claims, including state-law fraud claims. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338–39 (5th Cir. 2008) ("[S]tate-law fraud claims are subject to the pleading requirements of Rule 9(b).") (citing *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 430 (5th Cir. 2002); *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)). Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "What constitutes 'particularity' will necessarily differ with the facts of

each case and hence the Fifth Circuit has never articulated the requirements of Rule 9(b) in great detail."

*Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992). The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.,* 565 F.3d 200, 207 (5th Cir. 2009). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992).

### III.  DISCUSSION

Defendants move to dismiss under Rule 12(b)(6) Plaintiff's claims for: (1) fraud; (2) breach of fiduciary duty; (3) conversion; (4) defamation; and (5) conspiracy. The Court addresses each claim in turn below.

#### A. Fraud

Plaintiff first brings its claim of fraud against Dobbins and Hinojos. (Doc. 1 at 8). The elements of fraud under Texas law are: (1) a material representation was made; (2) the representation was false when made; (3) the speaker either knew it was false, or made it without knowledge of its truth; (4) the speaker made the representation with the intent that the other party should act on it; (5) the party acted in reliance; and (6) the party was injured as a result. *Coffel v. Stryker Corp.*, 284 F.3d 625, 631 (5th Cir. 2002) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). In addition to satisfying these elements, a plaintiff alleging fraud

must plead the claim with particularity by specifying the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177–79 (5th Cir. 1997) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). The Fifth Circuit has recognized that "[w]hat constitutes 'particularity' will necessarily differ with the facts of each case." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *opinion modified on denial of reh'g,* 355 F.3d 356 (5th Cir. 2003) (quoting *Guidry*, 954 F.2d at 288).

Applying these standards to this case, Plaintiff's complaint adequately identifies the "how," alleging Dobbins and Hinojos obtained Plaintiff's funding, goodwill, and donor relationships by misrepresenting their intent to represent Plaintiff throughout the Permian Basin and to forward all donations received on Plaintiff's behalf. (Doc. 1 at 7–9). *Id.* at 8. The Complaint also identifies the "who," namely, Defendants Dobbins and Hinojos, as the individuals who made the alleged misrepresentations. *Id.* Plaintiff expressly attributes the alleged fraudulent representation solely to these Defendants, thereby distinguishing them from the other party.

Where the Complaint falls short, however, is in alleging the "when," "where," and "what" of the alleged fraud with sufficient particularity. Plaintiff provides no specific time frame or location in which the alleged misrepresentations occurred, nor any indication of the context. Likewise, Plaintiff alleges only in general terms that Dobbins and Hinojos "represented they would send all donations to Plaintiff" and "agreed to represent Plaintiff throughout the Permian Basin" without identifying any particular false statements or detailing how these statements were communicated. *See Rivers & Hills Hosp. Grp., LLC v. GTB Rest. Texas, LLC*, No. 19-CV-00519,

6

2020 WL 129104, at *4 (W.D. Tex. Jan. 10, 2020) (dismissing a fraud claim where the plaintiff alleged general misrepresentations without specifying particular statements). Additionally, Plaintiff's allegation it has been damaged by Dobbins's and Hinojos's misrepresentations made to third parties is also insufficient. *See Burroughs v. APS Int'l, Ltd.*, 93 S.W.3d 155, 162 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (recognizing a plaintiff may only recover for misrepresentations made to another if the defendant intended or had reason to expect the statement would be repeated to and relied upon the plaintiff). Thus, absent factual allegations specifying the time, place, and precise content of the alleged misrepresentations made to Plaintiff, Plaintiff's Complaint does not satisfy Rule 9(b)'s heightened pleading standard.

Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's fraud claim (Doc. 13), and the claim be **DISMISSED WITHOUT PREJUDICE**.

### B. Breach of Fiduciary Duty

Plaintiff next brings its claim of breach of fiduciary duty against Dobbins and Hinojos. (Doc. 1 at 11). Under Texas law, Plaintiff must establish the following elements to show a breach of fiduciary duty: (1) a fiduciary relationship between Plaintiff and Defendants Dobbins and Hinojos, (2) Defendants Dobbins and Hinojos must have breached their fiduciary duty to Plaintiff, and (3) Defendants Dobbins and Hinojos's breach must result in either injury to Plaintiff or benefit to Defendants Dobbins and Hinojos. *R.P. Small Corp. v. Land Dep't, Inc.*, 505 F. Supp. 3d 681, 693 (S.D. Tex. 2020) (citing *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (quoting *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied))). Although "not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship," *Schlumberger Tech. Corp. v.*

*Swanson*, 959 S.W.2d 171, 176–77 (Tex. 1997), "an employee *may* . . . owe a fiduciary duty to his employer in certain circumstances." *Hewlett-Packard Co. v. Byd:Sign, Inc.*, No. 05CV456, 2007 WL 275476, at *7 (E.D. Tex. Jan. 25, 2007) (emphasis added). For instance, an employee may owe certain fiduciary duties to his employer when the employee has been placed in a position of peculiar confidence or trust toward the employer. *See Paschal v. Great W. Drilling, Ltd.*, 215 S.W.3d 437, 451 (Tex. App.—Eastland 2006, pet. denied). Even so, the Texas Supreme Court has cautioned it would not "create such a relationship lightly." *Schlumberger*, 959 S.W.2d at 177.

Applying these principles, the Court finds Plaintiff has not established a fiduciary relationship between itself and Defendants Dobbins and Hinojos. Plaintiff merely alleges it hired Dobbins to "operate the PWP branch," and "his responsibilities included . . . supporting [Plaintiff's] mission, garnering support, and collecting donations." (Doc. 1 at 4). Plaintiff then summarily concludes "[a]s employees of Plaintiff, Dobbins and Hinojos owed Plaintiff a fiduciary duty." *Id.* at 11. These allegations, without more, do not demonstrate Dobbins or Hinojos occupied positions of special trust or confidence sufficient to give rise to fiduciary obligations under Texas law. *See Gergan v. Kelly*, 355 S.W.3d 223, 227–28 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("[E]ven relationships that involve 'a high degree of trust or confidence' do not always rise to the level of [a] . . . fiduciary relationship."). The Complaint lacks any factual detail suggesting either Defendant were placed in a position of peculiar confidence or trust toward Plaintiff beyond the employer-employee relationship. *See id.* (holding a party's subjective belief fiduciary duties existed, without more, was insufficient to establish a fiduciary relationship); *Hewlett-Packard Co*, 2007 WL 275476, at *7 ("[C]ourts are reluctant to find the existence of special duties in employer/employee relationships."). Thus, because

Plaintiff has not sufficiently pleaded a fiduciary duty, it necessarily follows Plaintiff did not adequately plead a breach of fiduciary duty against Defendants Dobbins and Hinojos.

Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss as to Plaintiff's claim for breach of fiduciary duty against Defendants Dobbins and Hinojos be **GRANTED** (Doc. 6), and the claim be **DISMISSED WITHOUT PREJUDICE**.

### C. Conversion

Plaintiff next brings its claim of conversion against Dobbins and Mil2Civ. (Doc. 1 at 9). "Conversion is the 'unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights.'" *Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, LLC*, 360 S.W.3d 691, 699 (Tex.App.—Dallas 2012, no pet.) (quoting *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971)). A plaintiff must establish three elements for conversion under Texas law: "(1) the plaintiff, owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused plaintiff's demand for return of the property." *Big Thirst, Inc. v. Donoho*, 657 F. Supp. 3d 914, 922 (W.D. Tex. 2023) (citing *Cuidado Casero Home Health of El Paso, Inc. v. Ayuda Home Health Care Servs., LLC*, 404 S.W.3d 737, 748 (Tex. App.—El Paso 2013, no pet.)).

Additional requirements apply if the property at issue is money. *See GE Cap. Com., Inc. v. Wright & Wright, Inc.*, No. CIV 309-CV-572, 2009 WL 5173954, at *8 (N.D. Tex. Dec. 31, 2009) (citing *Chu v. Hong*, 249 S.W.3d 441, 444 (Tex. 2008)) ("Under Texas law, money can be converted only if it is specifically identified and held in trust."). Thus, an action lies for

conversion of money when: (1) the money is delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper. *Id.* at *8 (citing *In re TXNB Internal Case*, 483 F.3d 292, 308 (5th Cir. 2007)).

Plaintiff's conversion claim fails to state a plausible claim for relief under Texas law. The Complaint alleges Dobbins diverted donations from third-party sponsors intended for Plaintiff's organization to his own entity—Mil2Civ. (Doc. 1 at 6–7, 9). Plaintiff further alleges it never received those donations and Defendants continue to exercise control over the diverted funds. *Id.* at 9. Even accepting these allegations as true, Plaintiff fails to allege facts showing it owned, possessed, or was entitled to immediate possession of the funds at the time of the alleged conversion. Plaintiff's theory of ownership rests on the assertion that various companies "agreed to sponsor" Plaintiff's fundraising events and intended their payments to benefit Plaintiff. *Id.* at 5. However, as Defendants correctly observe, the Complaint characterizes these transactions as sponsorships for fundraising events—not as funds delivered for safekeeping or required to be maintained in a segregated account for Plaintiff's benefit. *See GE Cap. Com., Inc.*, 2009 WL 5173954, at *8 (dismissing conversion claim under Rule 12(b)(6) because complaint did not allege funds were delivered for safekeeping or intended to be kept segregated).

Plaintiff also fails to show it demanded the return of the funds or that any such demand would have been futile. Under Texas law, a demand for return is generally required before a conversion claim accrues, and "only extraordinary circumstances excuse the need for a demand." *In re TXNB Internal Case*, 483 F.3d at 307. Demand may be excused only when it would be useless or when the possessor's actions clearly repudiate the owner's rights. *See HHH Farms, LLC. v. Fannin Bank*, 648 S.W.3d 387, 421 (Tex. App.—Texarkana 2022, no pet). Here, the

Complaint contains no facts indicating Plaintiff ever sought return of the funds or that any attempt to do so would have been futile. Nor does Plaintiff allege conduct by Dobbins clearly repudiating Plaintiff's ownership rights. Without allegations establishing either a demand or circumstances excusing it, the Complaint fails to plead the third element of conversion. Thus, Plaintiff's allegations are insufficient to plausibly establish conversion of money.

Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's conversion claim (Doc. 13), and the claim be **DISMISSED WITHOUT PREJUDICE**.

### D. Defamation

Plaintiff next brings a claim of defamation against Dobbins and Mil2Civ. (Doc. 1 at 10). Defendants argue the Court should apply heightened pleading requirements to Plaintiff's defamation claim; specifically, "[t]he Complaint must identify . . . the speaker, and the time and place of the publication." (Docs. 13 at 10; 15 at 7). The Court therefore begins by addressing the proper pleading standard before turning to the merits of Plaintiff's defamation allegations.

Some federal courts have held defamation claims have a heightened pleading requirement. *See Jackson v. Dallas Indep. Sch. Dist.*, No. CIV. 398-CV-1079, 1998 WL 386158, at *5 (N.D. Tex. July 2, 1998). This reflects traditional state-law approaches which often require more specific pleadings in defamation actions. *See, e.g.*, *In re Jennings*, 203 S.W.3d 32, 34 n.2 (Tex. App.—San Antonio 2006, no pet.). However, there is no special pleading requirement in federal court for a defamation action, as pleading standards are a procedural matter, and no such requirement is set forth in the Federal Rules of Civil Procedure. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*, 559 U.S. 393, 404 (2010) (observing pleading standards are

considered procedural, not substantive, and federal procedural rules pre-empt rival state rules for proceedings in federal courts). "The Federal Rules of Civil Procedure impose no special pleading requirements for defamation as they do for a specified list of other matters." *Croixland Props. Ltd. P'ship v. Corcoran*, 174 F.3d 213, 215 n.2 (D.C. Cir. 1999) (citing Federal Rule of Civil Procedure 9, which lists the claims requiring enhanced pleadings, and noting defamation is not included). Because the Court exercises diversity jurisdiction under 28 U.S.C. § 1332 (Doc. 3 at 1), the substantive law governing the common law tort of defamation is supplied from the law of the surrounding state while the pleading standard is governed by federal law. *See Levine v. CMP Publications, Inc.*, 738 F.2d 660, 667 (5th Cir. 1984). Accordingly, in this diversity action, the Court applies the substantive law of the state while adhering to federal procedural and pleading rules.

To state a defamation claim, a plaintiff must show (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, at least amounting to negligence, and (4) damages, in some cases. *Innovative Block of S. Texas, Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020). "A defamatory statement is one in which the words tend to damage a person's reputation, exposing him or her to public hatred, contempt, ridicule, or financial injury." *Id.*; *see also Hancock v. Variyam*, 400 S.W. 3d 59, 63 (Tex. 2013) (defining defamation "as the invasion of a person's interest in her reputation and good name"). Additionally, defamation claims are of two types, per se and per quod. *Hancock*, 400 S.W.3d at 64 When defamation is per se, the communication is actionable in and of itself without proof of actual damages. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). A statement is defamatory per se when it falls within one of the categories that the common law considers so obviously harmful to reputation that the jury may

presume the existence of general damages.[2] *Id.* General damages are awarded for noneconomic harm, such as the loss of reputation embarrassment, humiliation, or loss of respect caused by the defamatory publication. *Id.; Innovative Block*, 603 S.W.3d at 418. Defamation per quod, on the other hand, is "[d]efamation that either (1) is not apparent but is proved by extrinsic evidence showing its injurious meaning, or (2) is apparent but not a statement that is actionable per se." *Innovative Block*, 603 S.W.3d at 418.

For the first element, Plaintiff must show Defendants published a statement. Publication is defined as disclosure of the defamatory statement by the maker to someone other than the subject of the statement. *See Doe v. SmithKline Beecham Corp.*, 855 S.W.2d 248, 259 (Tex. App.—Austin 1993), *aff'd as modified on other grounds*, 903 S.W.2d 347 (Tex. 1995). Here, Plaintiff's Complaint avers "Dobbins told Plaintiff's donors not to donate to Plaintiff 'because [Plaintiff] will not spend [donations] here; [Plaintiff] will spend it elsewhere.'" (Doc. 1 at 10). This plausibly sets fort an allegation of publication by Dobbins and Mil2Civ. *See id.*

For the second element, Plaintiff must allege the published statements referred to or concerned itself. *See Fields v. Keith*, 174 F. Supp. 2d 464, 473 (N.D. Tex. 2001). Plaintiff's Complaint claims the statements at issue directly accused it of distributing donations outside the Permian Basin. (Doc. 1 at 10). Plaintiff specifically alleges Defendants told its donors not to donate to Plaintiff "because [Plaintiff] will not spend [donations] here." *Id.* Its Complaint avers the alleged defamatory statements concerned it directly—they were not veiled statements that referred to it only obliquely—and the nature of these statements cited by Plaintiff, sounding in injury to business, are considered defamation per se. *See KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 690 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (explaining the law

---

2. Remarks that adversely reflect on a party's business or trade are deemed defamatory per se. *See Lipsky*, 460 S.W.3d at 596. Accusing someone of a crime, of having a foul or loathsome disease, or of engaging in serious sexual misconduct are also examples of defamation per se. *See id.*

presumes statements are defamatory per se when they falsely injure a party in its office, business, profession, or occupation); *see also Lipsky*, 460 S.W. 3d at 593 (recognizing business entities have reputations that can be libeled and that such entities can prosecute an action for defamation in their own names). As such, Plaintiff's Complaint adequately alleges the statements concerned itself.

Negligence regarding the truth or falsity of the negative statements is the third element of defamation. *See Fields*, 174 F. Supp. 2d at 473. Plaintiff avers Defendants "used [community networking] events to harm [Plaintiff's] reputation by making false statements regarding [Plainitff]," engaged in "intentional . . . misrepresentations [that] damaged Plaintiff's goodwill throughout the Permian Basin," and uttered "false statements to third parties . . . with malice and/or gross negligence," because, as a former employee of Plaintiff, Dobbins "understood Plaintiff's impact within the Permian Basin." (Doc. 1 at 8, 10). While Plaintiff's Complaint alleges this element of the tort in so many words, it also is, in a sense, conclusory. Conclusory allegations of elements of a claim are generally insufficient to state a claim. *See Twombly,* 550 U.S. at 555. However, in defamation cases, there is very little that can be practically added on this point, beyond the bare assertion that the statements at issue were false, and the defendants did or should have known that. Accordingly, courts have been reluctant to press for significant additional detail on this element. *See Lawler v. Miratek Corp.*, No. 09-CV-252, 2010 WL 2838359, at *4 (W.D. Tex. July 16, 2010) (accepting plaintiff's allegations that the statements at issue were "false and misleading and were made with the intent to harm [plaintiff's] reputation," and not demanding further particular detail on the issue of pleading negligence); *Robinson v. Radio One, Inc.*, 695 F. Supp. 2d 425, 431 (N.D. Tex. 2010) (accepting plaintiff's averment that he is not a homosexual as adequately pleading the falsity of statements which implied that he

14

was a homosexual, holding no additional factual detail was required to allege this element of defamation). Therefore, this element is satisfied as well.

Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss be **DENIED** as to Plaintiff's defamation claim. (Doc. 13).

### E. Conspiracy

Plaintiff finally brings a conspiracy claim against all Defendants. (Doc. 1 at 10). The elements of civil conspiracy are (1) two or more people; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Chavers v. Morrow*, No. CIV. A. H-08-3286, 2010 WL 3447687, at *6 (S.D. Tex. Aug. 30, 2010), *aff'd*, 449 F. App'x 411 (5th Cir. 2011) (citing *Plotkin v. Joekel*, 304 S.W.3d 455, 488 (Tex.App.—Houston [1st Dist.] 2009, pet. denied)). Importantly, "[c]ivil conspiracy is a derivative tort; therefore, liability for a civil conspiracy depends on participation in an underlying tort." *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 402 (5th Cir. 2013). "If a plaintiff fails to state a separate underlying claim on which the court may grant relief, then a claim for civil conspiracy necessarily fails." *Meadows v. Hartford Life Ins.*, 492 F.3d 634, 640 (5th Cir. 2007).

Applying these principles, Plaintiff's claim of civil conspiracy must fail. As detailed above, the possible bases for a conspiracy claim—fraud and conversion—are insufficiently pleaded. Without a plausible underlying claim, there can be no plausible claim for conspiracy. *See Meadows*, 492 F.3d at 640. Accordingly, the Court **RECOMMENDS** Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's conspiracy claim (Doc. 13), and the claim be **DISMISSED WITHOUT PREJUDICE**.

### F. Plaintiff's Request for Leave to Amend

In its Response, Plaintiff requests, in the alternative, the Court grant it leave to amend its Complaint for the first time. (Doc. 14 at 13). Federal Rule 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Rule 15(a) "favors granting leave to amend unless a substantial reason exists, such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party, and futility of amendment.'" *Smith v. McDonough*, No. 22-CV-01383, 2023 WL 5918322, at *9 (W.D. Tex. Sept. 8, 2023) (quoting *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993)). Although "leave to amend is by no means automatic," a court should "possess a 'substantial reason' to deny leave to file an amended complaint." *Lawton v. Osado Water Transfer Co.*, No. 15-CV-00189, 2016 WL 11586133, at *1 (W.D. Tex. Sept. 15, 2016) (citations omitted). Here, the Court finds leave to amend proper, as there is no evidence of undue delay, bad faith, and this will be Plaintiff's first amendment to its Complaint. Thus, the Court **RECOMMENDS** Plaintiff's request to amend its Complaint be **GRANTED**. (Doc. 14).

## IV. RECOMMENDATION

In accordance with the above discussion, the Court **RECOMMENDS** Defendants' Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 13). Defendants' Motion should be **GRANTED** as to Plaintiff's claims of fraud, breach of fiduciary duty, conversion, and conspiracy, and **DENIED** as to Plaintiff's claim of defamation. *Id.* The Court further **RECOMMENDS** Plaintiff's claims of fraud, breach of fiduciary duty, conversion, and conspiracy be **DISMISSED WITHOUT PREJUDICE**. Finally, the Court **RECOMMENDS** Plaintiff's request to amend its Complaint be **GRANTED**. Should the Report and

Recommendation be adopted, the Court **RECOMMENDS** Plaintiff be given **14 days** from the date of adoption to file an Amended Complaint.

SIGNED this 27th day of October, 2025.

                                    RONALD C. GRIFFIN
                                    UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).